IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| **HAVTECH, LLC,** *et. al.*, | * | |
| **Plaintiff,** | * | |
| v. | * | Civil Case No. SAG-22-00453 |
| **AAON INC.,** *et. al.*, | * | |
| **Defendants.** | * | |

## MEMORANDUM OPINION

Plaintiffs Havtech, LLC and Havtech Parts Division, LLC filed this action against AAON, Inc. and AAON Coil Products, Inc.[1] for alleged violation of the Maryland Equipment Dealer Contract Act, ECF 3. Defendants have filed a Motion to Dismiss the Complaint or in the alternative for summary judgment ("the Motion"), ECF 2. The issues have been fully briefed, ECF 2-1, ECF 17, ECF 18, ECF 24, and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2021). For the following reasons, Defendants' Motion will be granted.

### I. FACTUAL AND PROCEDURAL BACKGROUND

The following facts are derived from the Complaint, ECF 3, and are taken as true for purposes of evaluating Defendants' motion to dismiss. Havtech, LLC and Havtech Parts Division, LLC (collectively, "Havtech"), are sister companies incorporated in Delaware and Maryland, respectively, that sell heating, ventilation, and air conditioning ("HVAC") equipment and repair parts in the construction industry. ECF 2-1 ¶ 3. AAON Inc., an Oklahoma corporation, and AAON Coil Products, Inc., a Texas corporation (collectively, "AAON"), manufacture HVAC equipment

---

[1] In its Complaint, Havtech also named an additional entity, AAON, Inc. (Nevada) as a Defendant, which it has since voluntarily dismissed from the action, *see* ECF 15.

1

for use in commercial and industrial buildings, and "sell their products nationwide through independent businesses that are appointed as sales representatives for assigned geographic territories." *Id.* ¶¶ 12-13. Havtech distributed Defendants' HVAC equipment to customers in Maryland, the District of Columbia, and Northern Virginia as one of its appointed sales representatives for over twenty years. *Id.* ¶¶ 14-15. Although the relationship between Havtech and Defendants initially began as an "oral handshake agreement," "[a]t some point along the way, AAON issued a written policy manual that purported to define the terms of its agreement with all of its sales representatives." *Id.* ¶ 16. This written manual, the AAON Policy Manual for Sales Representatives ("Policy Agreement"), appointed Havtech as independent sales representatives to solicit orders for Defendants' products in an assigned sales territory. ECF 2-8 at 5. The Policy Agreement stipulates that such appointment may be terminated by either party at any time with good cause or without cause upon 30-days advance written notice by the terminating party. *Id.* at 8, ¶ 16.A. As relevant here, the Policy Agreement includes a choice-of-law clause, which provides that:

> This APPOINTMENT shall be governed and construed in all respects in accordance with the laws of the state of Oklahoma. Any litigation instituted by Rep against AAON pertaining to any breach or termination of this appointment, or pertaining in any other manner to this.

*Id.* at 9, ¶ 14.

On January 14, 2022, Defendants and Havtech met at Havtech's office in Columbia, Maryland. ECF 3 ¶ 18. At the meeting, Defendants provided Havtech a letter stating that "AAON has decided to change our representation in Maryland, Northern Virginia & the District of Columbia. This letter serves as your notice that AAON is cancelling Havtech as an AAON representative . . . The relationship between AAON and Havtech will cease on February 13th, 2022." *Id.*

Havtech filed its Complaint against Defendants in the Circuit Court for Howard County, Maryland on January 24, 2022, asserting a single claim for damages under the Maryland Equipment Dealer Contract Act ("MEDCA" or "the Act").  ECF 2-1.  Defendants removed the action to this Court on February 23, 2022, ECF 1, and subsequently moved to dismiss, ECF 17.

## II.  LEGAL STANDARDS

Under Rule 12(b)(6), a defendant may test the legal sufficiency of a complaint by way of a motion to dismiss.  *See In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom.*, *McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Federal Rule of Civil Procedure 8(a)(2).  That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for all civil actions[.]") (quotation omitted); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017).  However, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2).  *Twombly*, 550 U.S. at 555.  Further, federal pleading rules "do not

countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556.

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Semenova v. MTA*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, 565 U.S. 943 (2011). However, a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

Both parties have attached certain documents to the briefing of this motion. *See, e.g.*, ECF 2-2–ECF 2-11; ECF 17-1–ECF 17-3. As another judge of this Court cogently explained:

> As a general rule, the court does not consider extrinsic evidence at the motion to dismiss stage; however, it is a well-recognized exception to this rule that the court may consider, without converting the motion to dismiss into one for summary judgment, documents attached to the complaint as exhibits, and documents attached to a motion to dismiss if the document is "integral to the complaint and there is no dispute about the document's authenticity." *See Goines* [], 822 F.3d [at] 166. A document is "integral" to the complaint if its "very existence, and not the mere information it contains, gives rise to the legal rights asserted." *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (internal quotation marks omitted) (emphasis removed). Where the complaint shows that the plaintiff has adopted the contents of the documents attached to the complaint, "crediting the document over conflicting allegations in the complaint is proper." *Goines*, 822 F.3d at 167.

*Reamer v. State Auto. Mut. Ins. Co.*, 556 F. Supp. 3d 544, 549 (D. Md. 2021). Applying those standards, the Policy Agreement is clearly integral to the Complaint because its termination gives rise to Havtech's claim. *See, e.g.*, ECF 2-1 ¶ 23 (Under MEDCA, "[Defendants] could not lawfully terminate the [Policy] Agreement without good cause."). Neither party has challenged the authenticity of the Policy Agreement, which was also expressly referenced in the Complaint. *Id.* ¶¶ 16, 23. Accordingly, this Court deems it appropriate to consider the Policy Agreement, ECF 2-8, in adjudicating Defendants' Motion, without converting the motion into one for summary judgment.

Defendants styled their Motion as a motion "in the alternative" seeking summary judgment. *See* ECF 2-1. Summary judgment typically is not granted "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours*, 637 F.3d at 448-49 (citations omitted). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet*

*Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)).  To present the issue, the nonmovant is typically required to file an affidavit pursuant to Federal Rule of Civil Procedure 56(d), explaining why "for specified reasons, it cannot present facts essential to justify its opposition," without further discovery. Havtech has not done so here; indeed, in its memorandum in opposition to the Motion, Havtech has appended its own exhibits for consideration.  *See* ECF 17-1; ECF 17-2; ECF 17-3.  As described below, however, this Court concludes that the standard enumerated under Rule 12(b)(6) is dispositive; accordingly, this Court declines to consider the Motion as one seeking summary judgment and will evaluate it only under the motion to dismiss standard described above.[2]

## III.  ANALYSIS

Havtech alleges its sole claim under MEDCA, a Maryland statute that imposes certain requirements on suppliers' distribution contracts with dealers, a term defined to include the sellers of commercial HVAC equipment or repair parts.  Md. Code Ann., Com. Law §§ 19-101, *et seq*. In relevant part, MEDCA provides that a supplier may not "terminate, cancel, fail to renew, or substantially change the competitive circumstances" of a qualifying contract with a dealer "without good cause."  § 19-103; *see also* § 19-102 (defining good cause).  MEDCA creates a civil cause of action for violations of the Act, "[n]otwithstanding an agreement to the contrary, and in addition to any other available legal remedies."  § 19-303.

Essentially, the Complaint alleges that because Defendants terminated the Policy Agreement without good cause, they are liable to Havtech for damages under MEDCA.  ECF 2-1 ¶ 26.  In their Motion, Defendants argue that dismissal is warranted because MEDCA is

---

[2] In light of the Court's decision to evaluate the Motion only under Rule 12(b)(6), this Court has not reviewed the exhibits appended to Defendants' Motion or Havtech's opposition, with the exception of the Policy Agreement, ECF 2-8.

inapplicable to the parties' Policy Agreement, which is governed and construed under Oklahoma law. The question, then, is whether Defendants' termination in accordance with a Policy Agreement governed by Oklahoma law is actionable under a Maryland statute prohibiting the same. This Court concludes that it is not, and will accordingly grant Defendants' Motion.

Federal courts sitting in diversity apply the conflict of law rules prevailing in the states in which they sit. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). With limited exceptions, Maryland courts have "long recognized the ability of contracting parties to specify in their contract that the laws of a particular State will apply in any dispute over the validity, construction, or enforceability of the contract, and thereby trump the conflict of law rules . . .". *Jackson v. Pasadena Receivables, Inc.*, 398 Md. 611, 617, 921 A.2d 799, 803 (2007). Here, the Policy Agreement contains a clear choice-of-law clause in favor of Oklahoma. *See* ECF 2-8 at 9 ¶ 14 ("This APPOINTMENT shall be governed and construed in all respects in accordance with the laws of the state of Oklahoma."). Absent a recognized exception, Havtech may not wield Maryland law to practically invalidate the Policy Agreement's express provision that either party "may terminate . . . at will, at any time either with or without cause." ECF 2-8 at 8 ¶ 16.A.

This Court is unpersuaded by Havtech's assertion that the "fundamental policy" exception justifies the application of Maryland law despite the Policy Agreement's choice-of-law clause. That exception provides that a choice of law provision may be set aside where

> [1] application of the law of the chosen state would be contrary to a fundamental policy of a state which [2] has a materially greater interest than the chosen state in the determination of the particular issue and which . . . [3] would be the state of the applicable law in the absence of an effective choice of law by the parties.

*Jackson*, 398 Md. at 619 (quoting Restatement (Second) Conflict of Laws § 187(2)); *Three M Enterprises*, 368 F. Supp. 2d at 457. At minimum, Havtech has failed to establish the second requisite element of the fundamental policy exception because there is no indication that Maryland

7

has a materially greater interest than Oklahoma in the resolution of the instant dispute. As described above, only one of the four parties to the suit is incorporated and organized under the laws of the State of Maryland. *See* ECF 3 ¶¶ 1-7. Although Maryland is the principal place of business of both Havtech entities, Oklahoma likewise maintains an interest in AAON, Inc., which operates its principal place of business in that state. Moreover, the Policy Agreement governs the distribution of products in several states, of which Maryland is merely one. ECF 3 ¶ 14. Finally, although this Court recognizes Maryland's interest in regulating contracts involving domestic HVAC dealers, it cannot conclude that this interest is materially greater than Oklahoma's countervailing stake in the enforceability of contractual provisions favoring its state law. *Contra Three M Enterprises*, 368 F. Supp. 2d at 459 (concluding that Maryland has a materially greater interest than the competing state as it relates to enforcement of a Maryland statute for the protection of domestic franchisees doing business exclusively within the state). Maryland's and Oklahoma's comparable interests in the litigation foreclose Havtech's attempt to invoke the fundamental policy exception. Having entered a Policy Agreement consenting to the application of Oklahoma law, Havtech cannot marshal Maryland law to invalidate it.

To resist dismissal, Havtech raises two interrelated arguments: (1) that MEDCA is a statutory cause of action and, under statutory choice-of-law principles, Maryland law governs; and (2) that the Policy Agreement's choice-of-law clause does not govern its separate, standalone tort claim under MEDCA. Both are easily refuted.

Turning to its first argument, Havtech insists that because MEDCA is a statutory cause of action, this Court should employ the statutory choice-of-law principles outlined in the Restatement (Second) Conflict of Laws § 6(1). ECF 17 at 18. In the next breath, however, Havtech concedes a fatal point: "[it] is not aware of any Maryland cases that have expressly considered Restatement

(Second) of Conflict of Laws § 6(1)." *Id.* at 19. This Court is bound to apply Maryland choice-of-law principles, and accordingly declines Havtech's invitation to engage in an analysis that is concededly novel to Maryland courts. Next, Havtech cites *Cunningham v. Feinberg*, 441 Md. 310, 323-326 (2015) for the proposition that "for statutory causes of action, statutory choice-of-law principles should apply." ECF 24 at 1. Havtech's reliance on *Cunningham* is misplaced. *Cunningham* did not enunciate an analytical framework for "statutory choice-of law," but rather determined that contract choice-of-law principles did not control the viability of a Maryland Wage Payment and Collection Law ("MWPCL") claim that merely related to, but did not require interpretation of, an employment agreement. *See Cunningham*, 441 Md. at 315 ("The choice of law doctrine lex loci contractus is not implicated, *in the absence of an express choice of law selection in the contract*, when such claims *do not involve the validity, enforceability, interpretation, or construction* of the employment contract.") (emphasis added). To the extent that *Cunningham* represents a tacit endorsement of statutory choice-of-law principles, it is readily distinguishable from the instant dispute because the agreement in that case was devoid of relevant governing terms. In stark contrast to *Cunningham*, Havtech disputes the validity of an express contractual provision—authorizing either party to terminate without cause—that appears in a Policy Agreement including a plain choice-of-law selection. *Contra id.* at 326-28 ("If the contract contains a choice of law provision, we apply generally the law of the specified jurisdiction . . . In the present case, the Agreement between the parties contains no choice of law provision."); *id.* at 328-29 ("[I]f there was a dispute over the construction or interpretation of one of the express terms or provisions of the contract, we would apply Virginia law . . . [But,] [t]he contract contains no express terms regarding what [Plaintiff] was to be paid . . . [and] is silent largely as to the recovery

9

of unpaid wage."). Simply put, Maryland caselaw does not support Havtech's request to disregard the Policy Agreement's stipulation that its terms be governed and interpreted under Oklahoma law.

Havtech's second argument fares no better. Havtech insists that its claim survives because separate, standalone tort claims fall "outside a choice-of-law provision's scope unless the clause's language indicates an intent for the selected law to govern more than the meaning of the contract itself." ECF 17 at 26 (quoting *Almeida v. BOKF, NA*, 471 F. Supp. 3d 1181 (N.D. Okla. 2020)). Even were this Court bound by the Oklahoma choice-of-law rules on which Havtech relies, its position still fails for a simple reason: Havtech's MEDCA claim is not independent of the Policy Agreement, but rather a direct challenge to its validity. The sole claim in Havtech's Complaint depends upon the invalidation or material alteration of the meaning of the Policy Agreement itself, since the Policy Agreement permits termination without cause.[3] Accordingly, Havtech's claim falls squarely within the scope of the Policy Agreement's choice-of-law provision.[4] MEDCA does not govern the Policy Agreement or Defendants' termination thereof.

---

[3] Courts applying other states' choice-of-law principles have also determined that plaintiffs may not assert a MEDCA claim where the underlying contract contains a choice-of-law clause in favor of a different state. *ABB, Inc. v. Havtech, LLC*, 176 A.D.3d 580, 581 (2019) ("Non-New York statutes do not invalidate contracts that chose New York law and are valid and enforceable under New York law."); *see also Havtech Parts Div., LLC v. Advanced Thermal Sols., LLC*, 2020 WL 6624931, at *10 (Md. Ct. Spec. App. Nov. 12, 2020) (New York res judicata principles barred Havtech's claim against a defendant for aiding and abetting the alleged underlying MEDCA violation in *ABB*). This Court similarly concludes that although "non-contractual tort claims fall generally outside the scope of contractual choice of law provisions, Havtech's [MEDCA claim] did not sound in tort, but [is] contractual in nature because [it] arose out of a dispute over the validity of several contracted-for provisions of the Agreement." *Id.* at *3.

[4] Defendants also seek dismissal of the Complaint for improper venue. *See* ECF 2-1 at 17 (citing Fed. R. Civ. P. 12(b)(3)). In light of its conclusion that the Complaint fails to state a claim, however, this Court finds it unnecessary to address Defendants' remaining arguments.

## IV. CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss, ECF 2, is granted. A separate Order follows.

Dated: April 25, 2021 /s/
Stephanie A. Gallagher
United States District Judge