IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| **HAVTECH, LLC,** *et al.*, | * | |
| Plaintiffs, | * | |
| v. | * | Civil Case No. SAG-22-00453 |
| **AAON INC.,** *et al.*, | * | |
| Defendants. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM OPINION**

After an initial version of their complaint was dismissed, Plaintiffs Havtech, LLC and Havtech Parts Division, LLC (collectively, "Havtech") filed a First Amended Complaint ("FAC") against AAON, Inc. and AAON Coil Products, Inc. (collectively, "AAON"), asserting violations of Oklahoma's Fair Practices of Equipment Manufacturers, Distributors, Wholesalers and Dealers Act ("OEDA"). ECF 50. AAON has again responded with a Motion to Dismiss the FAC ("the Motion"), ECF 49. The issues have been fully briefed, ECF 53, 59, and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2021). For the following reasons, AAON's Motion will be denied, without prejudice to its ability to re-raise certain arguments at the conclusion of discovery.

**I.   FACTUAL AND PROCEDURAL BACKGROUND**

The following facts are derived from the FAC, ECF 50, and are taken as true for purposes of evaluating AAON's motion to dismiss. Havtech sells heating, ventilation, and air conditioning ("HVAC") equipment and repair parts in the construction industry. ECF 50 ¶ 5. AAON manufactures HVAC equipment for use in commercial and industrial buildings, and sells its "products nationwide through independent businesses, . . . , that are appointed as sales representatives for assigned geographic territories." *Id.* ¶¶ 13–14. Havtech works with construction

1

contractors, building owners, and engineers to choose and configure HVAC equipment for construction projects. *Id.* ¶ 15. AAON then manufactures HVAC equipment, which Havtech distributes. *Id.* ¶¶ 8, 15. The equipment AAON manufactures "for use by the construction industry" includes "rooftop units, outdoor air-handling units, indoor air handling units, chiller, condensing units, chillers, condensing units, water-source heat pumps, and coils." *Id.* ¶ 13.

Havtech distributed AAON's HVAC equipment and parts to customers in Maryland, the District of Columbia, and Northern Virginia as one of its appointed sales representatives for over twenty-five years. *Id*. ¶¶ 18–19. Although the relationship between Havtech and AAON initially began as an "oral handshake agreement," "[a]t some point along the way, [AAON] issued a written policy manual that purported to define the terms of its agreement with all its sales representatives." *Id.* ¶ 20. This written manual, the AAON Policy Manual for Sales Representatives ("Dealer Agreement"), appointed Havtech as its independent sales representative to solicit orders for AAON's products in an assigned sales territory. ECF 49-2 at 5. The Dealer Agreement stipulates that such appointment may be terminated by either party at any time with good cause or without cause upon 30-days' advance written notice by the terminating party. *Id.* at 8, ¶ 16.A. As relevant here, the Dealer Agreement includes a choice-of-law clause, which provides that:

> This APPOINTMENT shall be governed and construed in all respects in accordance with the laws of the state of Oklahoma. Any litigation instituted by Rep against AAON pertaining to any breach or termination of this appointment, or pertaining in any other manner to this.

*Id.* at 9, ¶ 14.

On January 14, 2022, AAON and Havtech met at Havtech's office in Columbia, Maryland. ECF 50 ¶ 61. At the meeting, AAON provided Havtech a letter stating that "[AAON has] decided to change our representation in Maryland, Northern Virginia & the District of Columbia. This

letter serves as your notice that [AAON is] cancelling Havtech as a[n] AAON representative . . . The relationship between [AAON] and Havtech will cease on February 13th, 2022." *Id.*

Havtech filed its Complaint against AAON in the Circuit Court for Howard County, Maryland on January 24, 2022, asserting a single claim for damages under the Maryland Equipment Dealer Contract Act ("MEDCA"). ECF 3. AAON removed the action to this Court on February 23, 2022, ECF 1, and subsequently moved to dismiss, ECF 17. This Court granted the motion to dismiss without prejudice, finding that Oklahoma law governed the parties' dispute. ECF 29, 30. Havtech then filed the instant FAC asserting its claim under the OEDA, Oklahoma's analogue to MEDCA. ECF 50.

## II.  LEGAL STANDARDS

Under Rule 12(b)(6), a defendant may test the legal sufficiency of a complaint by way of a motion to dismiss. *See In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom.*, *McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Federal Rule of Civil Procedure 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

To survive a motion under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for all civil actions[.]") (quotation omitted); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). However, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Further, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556.

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Semenova v. MTA*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, 565 U.S. 943 (2011). However, a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from

4

the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

Havtech has attached certain documents to the briefing of this motion. *See, e.g.*, ECF 49-2. As another judge of this Court cogently explained:

> As a general rule, the court does not consider extrinsic evidence at the motion to dismiss stage; however, it is a well-recognized exception to this rule that the court may consider, without converting the motion to dismiss into one for summary judgment, documents attached to the complaint as exhibits, and documents attached to a motion to dismiss if the document is "integral to the complaint and there is no dispute about the document's authenticity." *See Goines* [], 822 F.3d [at] 166. A document is "integral" to the complaint if its "very existence, and not the mere information it contains, gives rise to the legal rights asserted." *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (internal quotation marks omitted) (emphasis removed). Where the complaint shows that the plaintiff has adopted the contents of the documents attached to the complaint, "crediting the document over conflicting allegations in the complaint is proper." *Goines*, 822 F.3d at 167.

*Reamer v. State Auto. Mut. Ins. Co.*, 556 F. Supp. 3d 544, 549 (D. Md. 2021). Applying those standards, the Dealer Agreement is clearly integral to the Complaint because its termination gives rise to Havtech's claim. Neither party has challenged the authenticity of the Policy Agreement, which is also expressly referenced in the FAC. ECF 50 ¶ 63 ("Defendants' termination of the Dealer Agreement without cause violates . . . the Oklahoma Equipment Dealer Act."). Accordingly, this Court deems it appropriate to consider the Dealer Agreement, ECF 49-2, in adjudicating AAON's Motion, without converting the motion into one for summary judgment.[1]

---

[1] AAON also attaches two other exhibits to its motion: the Standard Terms of sale, ECF 49-3, and an email exchange regarding the existence of legislative history in Oklahoma, ECF 49-4. This Court does not deem it proper to consider the contents of either in adjudicating this motion, and for the reasons discussed below as to the Standard Terms, needs not do so.

### III. ANALYSIS

AAON alleges three bases for dismissal: (1) the OEDA does not apply to the equipment the parties transacted; (2) the OEDA is unconstitutional; and (3) the parties' agreement is governed by a forum selection clause prohibiting adjudication in this Court. For the reasons addressed below, the latter two arguments lack merit, and the first argument fails at this stage but can be re-raised at the conclusion of discovery.

#### A. Constitutionality of OEDA

This Court first turns to AAON's contention that OEDA is unconstitutional because it (1) violates the Dormant Commerce Clause and (2) violates procedural due process as it is void-for-vagueness. ECF 49 at 15-25. Each argument lacks merit.

##### 1. Dormant Commerce Clause

The Commerce Clause of the United States Constitution affords Congress the power "to regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes . . ." US CONST. art. I, § 8, cl. 3. Under a legal doctrine known as the "Dormant Commerce Clause," the Supreme Court has interpreted the Commerce Clause to restrain states from erecting barriers against interstate trade. *See, e.g.*, *Dennis v. Higgins*, 498 U.S. 439, 446 (1991). A court must therefore strike down a state statute that discriminates against interstate commerce, unless the statute can survive strict scrutiny. *B-21 Wines, Inc. v. Bauer*, 36 F.4th 214, 222 (4th Cir. 2022). Here, AAON suggests that the OEDA allows equipment dealers to sue in any court of competent jurisdiction, but restricts equipment suppliers to filing suit in Oklahoma state court. Thus, AAON posits, the OEDA discriminates against out-of-state suppliers who would be economically disadvantaged by litigating their disputes in Oklahoma. Thus, AAON alleges, the OEDA operates

6

as a "crude tool of economic protectionism designed to discourage out-of-state suppliers." ECF 49-1 at 19.

AAON's argument misreads the statute. Initially, this Court notes that Havtech, a dealer, asserts its claims under § 248 of OEDA, not the section AAON challenges, § 251. But even § 251 meets constitutional muster. It reads:

> Any person who is injured in his business or property by a violation of this act or because he refuses to accede to a proposal for an arrangement which, if consummated, would be in violation of this act, may bring a civil action in a court of competent jurisdiction in this state to enjoin further violations and to recover the damages sustained by him together with the costs of the suit, including a reasonable attorney's fee.

Okla. Stat. § 15-251. The venue provision is permissive, in that it says aggrieved persons "may" sue in Oklahoma courts but does not prohibit them from suing elsewhere. *See Mims v. Arrow Financial Servs., LLC*, 565 U.S. 368, 380 (2012) ("It is general rule that the grant of jurisdiction to one court does not, of itself, imply that the jurisdiction is to be exclusive.") (citing *United States v. Bank of New York & Trust Co.*, 296 U.S. 463, 479 (1936)); *see also Championship Tournaments, LLC v. U.S. Youth Soccer*, Civ. No. ELH-18-2580, 2019 WL 528174, at *6 (D. Md. Feb. 8, 2019) ("[T]he word 'may' in a forum selection clause, in the absence of any exclusive language, connotes a permissive clause that does not exclude other proper venues."). In the absence of any such exclusivity, AAON's Dormant Commerce Clause argument is a nonstarter.

### 2. Void for Vagueness

AAON's remaining constitutional argument contends that the OEDA is unconstitutionally vague. A statute is void-for-vagueness when it is sufficiently indefinite as to fail to give fair warning of its liabilities, thus infringing procedural due process. *Am. Comm'ns Ass'n, C.I.O. v. Douds*, 339 U.S. 382, 413 (1950). The test for vagueness has two prongs: (1) whether the statute

fails to give a person of ordinary intelligence a reasonable opportunity to know what is prohibited and (2) whether the statute encourages arbitrary and discriminatory enforcement because the legislative standards are unclear. *See United States v. Davis*, __ U.S. __, 139 S. Ct. 2319, 2325 (2019). Moreover, economic regulations are "subject to a less strict vagueness test" than criminal statutes "because businesses, which face economic demands to plan behavior carefully, can be expected to consult relevant legislation in advance of action." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498 (1982). A civil statute, like this, that does not implicate constitutionally-protected conduct is not unconstitutional unless it "is impermissibly vague in all of its applications." 455 U.S. at 495.

AAON's facial challenge alleges that the statute's definition of "good cause" is vague. The OEDA defines "good cause" as "the failure by a dealer to substantially comply with essential and reasonable requirements imposed upon the dealer by the dealer agreement, provided such requirements are not different from those requirements imposed on other similarly situated dealers either by their terms or in the manner of their enforcement." Okla. Stat. § 15-245A.1(A). This language precedes a separate list of other grounds constituting good cause for termination of dealer agreements. *Id.* at § A.3(B). As Havtech argues in its briefing, twenty other states use similar language to define "good cause" in their analogous dealer protection statutes, ECF 53 at 21 n.7, and three United States Circuit Courts have rejected similar vagueness challenges to the Wisconsin analogue to the OEDA, which uses identical language defining good cause. *See Kealey Pharmacy & Home Care Servs., Inc. v. Walgreen Co.*, 761 F.2d 345, 351 (7th Cir. 1985); *C.A. May Marine Supply Co. v. Brunswick Corp.*, 557 F.2d 1163, 1167 (5th Cir. 1977); *Boatland, Inc. v. Brunswick Corp.*, 558 F.2d 818, 824 (6th Cir. 1977). This Court agrees with those courts that the definition

of good cause is not vague. Moreover, the statute is certainly not impermissibly vague in all of its applications.

AAON also argues that the OEDA is void-for-vagueness as applied to the facts of this case, because the term "construction equipment" is not defined and the word "equipment" is employed in the global definition of equipment, undermining the definition's usefulness. This Court disagrees with the premise that those terms require additional statutory definition, as both "construction" and "equipment" are terms that can be interpreted by "people of common intelligence." 139 S. Ct at 2325 (internal quotation omitted). As discussed below, while there may be a factual dispute in this case about whether the equipment sold by Havtech is actually used in connection with construction, that dispute does not render the statute vague as applied. AAON's constitutional challenges to the OEDA, therefore, are meritless.

B.  Forum Clause

AAON next contends that the Dealer Agreement contains a forum selection clause requiring the litigation of this dispute in Oklahoma. Its argument, however, overly simplifies the contractual agreement between these parties. AAON argues that the Standard Terms associated with each of Havtech's sales contains a forum selection provision requiring claims to be resolved "in Tulsa County, Oklahoma." Thus, if the parties' dispute implicated a particular purchase of equipment by Havtech, Havtech would be bound by the Standard Terms governing the sale. The parties' Dealer Agreement, however, which governed the parties' ongoing distribution relationship, contained no such language. In fact, the subsection of the Dealer Agreement captioned, "Applicable Law, Forum Selection and Consent to Jurisdiction" appears to have been crudely redacted to eliminate any forum selection provision, leaving only a mysterious sentence fragment in its wake. ECF 49-2 at 9, ¶ 14 ("Any litigation instituted by [Havtech] against AAON

pertaining to any breach or termination of this appointment, or pertaining in any other manner to this."). Nothing in that provision mandates litigation in Oklahoma.

AAON's alternative argument that the Dealer Agreement incorporates the Standard Terms by reference is unavailing. This Court's review of the Dealer Agreement revealed no such incorporation. While the Dealer Agreement makes clear that any order of AAON's equipment is bound by the Standard Terms, *see* ECF 49-2 at 10, it does not apply the Standard Terms to the overarching dealer relationship. In sum, there is nothing to indicate "a clear intent to incorporate the terms" of the Standard Terms into the Dealer Agreement. *Bass v. Tour 18 at Rose Creek, L.P.*, Civ. No. 17-006-R, 2018 WL 1582471, at *3 (W.D. Okla. Mar. 30, 2018).

Finally, this Court ascertains no basis to dismiss on the doctrine of *forum non conveniens*. This Court must consider "a range of considerations, . . . most notably the convenience to the parties and the practical difficulties that can attend the adjudication of a dispute in a certain locality." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 723 (1996) (citations omitted). Here, there is no meaningful inconvenience. AAON continues to do substantial business in Maryland and is a large company with significant resources. Additionally, because the claims arise out of a business relationship involving Maryland and its surrounding areas, the relevant documents and witnesses are likely present here, not in Oklahoma. Finally, this Court's docket will permit timely adjudication of the parties' dispute, and its familiarity with this case after addressing several motions will be helpful as the case proceeds forward.

### C. Scope of OEDA

The final dispute is whether the HVAC-related items manufactured by AAON and designed by Havtech for use in new commercial buildings are "used for or in connection with . . . construction . . . activities or applications." Okla. Stat. § 15-245(7). At this stage, however, this

Court takes as true the allegations in Havtech's FAC, which states that the commercial equipment is "for use by the construction industry," ECF 50 ¶ 13, and that its job is to "select and configure HVAC equipment for construction projects." *Id.* ¶ 15. Of course, discovery may reveal facts allowing AAON to argue that, in fact, the HVAC systems sold by Havtech are not "used for or in connection with" construction purposes. And those facts could well be determinative in this inquiry: for example, the result might differ if the HVAC system is installed for the purpose of cooling the facility and workers during the construction process versus simply being installed for eventual use in a still-unfinished building. Regardless, at present, taking Havtech's well-pled allegations as true, Havtech has alleged sufficient facts to state a claim under OEDA. Of course, AAON may renew its argument at the close of discovery, when Havtech will have to adduce facts demonstrating a genuine issue of material fact regarding its claim.[2]

## IV. CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss the FAC, ECF 49, is denied. A separate Order follows.

Dated: January 17, 2023                                    /s/
                                                Stephanie A. Gallagher
                                                United States District Judge

---

[2] At that stage in the litigation, this Court will be better able to determine whether the facts and law permit this Court to rule whether the parties' conduct is governed by OEDA, or whether the question is better certified to the Supreme Court of Oklahoma as an issue of first impression.